IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

SOLOMON HESS LLC,              )
                               )
     Plaintiff,                )
                               )
          v.                   )     1:09cv362 (JCC)
                               )
BEACH FIRST NATIONAL BANK,     )
                               )
     Defendant.                )

**M E M O R A N D U M   O P I N I O N**

          This matter comes before the Court on Defendant Beach

First National Bank's ("Beach First's") motion to dismiss.  For

the following reasons, the Court will deny the motion.

**I. Background**

          This case began with Beach First's loan of

$3,000,000.00 to a restaurant in Myrtle Beach, South Carolina.

Two investment funds managed by Plaintiff Solomon Hess SBA

Management LLC ("Hess")[1] purchased parts of the loan; soon after,

the restaurant defaulted on the debt.  On April 9, 2009, Hess

filed a complaint ("Complaint"), making claims for fraud and

constructive fraud based on certain false and misleading

---

[1] Hess managed the two LLCs that acquired parts of the loan, Solomon Hess SBA Loan Fund LLC and ESI Investors LLC.  The Complaint states that Hess is "the duly authorized asignee and owner of all claims against defendant Beach First National Bank" that relate to the loan acquisition.  For the sake of convenience, the Court will not make separate references to the Hess-controlled entities; instead, it will refer to Hess and the LLCs it controls as "Hess."

1

statements allegedly made by agents of Beach First prior to the sale.  The allegations in the Complaint are as follows.

Hess is a Virginia limited liability company with its principal place of business in Virginia; its members are also citizens of Virginia.  (Compl. ¶ 1.)  Beach First is a national bank with its principal place of business in South Carolina. Beach First does not contest this Court's subject matter jurisdiction, which is based on the diversity of the parties and the presence of more than $75,000 in dispute.  *See* Compl. ¶ 3; 28 U.S.C. § 1332.

On January 9, 2008, Beach First loaned a principal amount of $3,000,000.00 (the "Loan" or "Okra Loan") to Fried Okra, Inc. ("Okra"), which owned and operated the Thoroughbreds Restaurant (the "Restaurant") in Myrtle Beach, South Carolina. (Compl. ¶ 14.)  Eighty percent of the Okra Loan was guaranteed by the United States Department of Agriculture (the "USDA"). (Compl. ¶¶ 7, 14.)  The USDA uses its Business and Industry Guaranteed Loan Program ("B&I Program") to stimulate rural economies.  (Compl. ¶ 7.)  In the event of default, the USDA pays off the principal amount that it guaranteed through the B&I Program.  (Compl. ¶ 10.)

Hess investigates and purchases existing loans guaranteed by government agencies.  (Compl. ¶ 6.)  When it acquires B&I Program loans, Hess typically pays a "premium" to

2

the selling lender.  It did so in this case, paying Beach First a premium of more than $99,000.00.  (Compl. ¶¶ 8, 19.)  Buyers and originators of guaranteed loans – like the parties here – know that a loan's anticipated life-cycle will affect its investment value; if a loan is paid off or refinanced soon after acquisition, or if the borrower defaults shortly after acquisition, then the buyer of the loan will lose the acquisition costs and premium that it paid to obtain the loan.  (Compl. ¶¶ 9-10.)

Around July 2008, Hess learned that Beach First was interested in selling the Okra Loan and other loans guaranteed in whole or in part by the federal government.  (Compl. ¶ 11.)  Hess contacted a Beach First vice president, a Mr. Johnny Brown ("Brown"), who assured Hess that all of Beach First's B&I Program loans were performing well and could be expected to do so in the future.  (Compl. ¶ 11.)  A Hess agent then traveled to Beach First's offices and met with Brown, who made similar statements and said that the Okra Loan was "good solid credit" and "fine." (Compl. ¶¶ 13, 15.)  Brown also said that the Restaurant had been in operation for a long time, was a staple in the Myrtle Beach community, and was in all respects a successful enterprise. (Compl. ¶ 15.)  Around July 25, 2008, Brown provided a written, signed "letter of attestation," in which he represented that:

> [A]s of the loan sale date, neither the Lender
> nor any of its directors, officers, employees,

3

> or agents has, or should have, through the
> exercise of reasonable diligence, any actual
> or constructive knowledge of any default by
> Borrower on the Note, or has any information
> indicating an increased likelihood of a
> default by Borrower or prepayment of the Loan
> by Borrower through the refinancing of the
> Loan, sale of business or otherwise.

(Compl. ¶ 17 & Ex. C.)

Based on these assurances, Hess purchased two-thirds of the guaranteed portion of the Loan in a transaction brokered by Cantor Fitzgerald & Co., a third-party brokerage, around August 2008. (Compl. ¶ 18.) Hess paid Beach First a premium of more than $99,000.00, equal to 6.125% of the par value of the portion of the Loan that it purchased. (Compl. ¶ 19.) Hess then sold most of its interest in the Loan to another entity, but it retained a partial interest, including its investment in the premium. (Compl. ¶ 20.)

Soon afterward, the Okra Loan went into default. After Beach First sold the Loan, Okra made a partial, six-day payment, one monthly payment, and nothing thereafter. (Compl. ¶ 21.) It also sold the Restaurant. (Compl. ¶ 25.) As a result of the default, Hess lost its premium payment, interest on the portion of the Loan that it retained until that portion was satisfied by the USDA, and travel and administrative expenses. (Compl. ¶ 22.)

On information and belief, Hess alleges that Brown falsely stated that Beach First was not aware of information indicating an increased likelihood of default. (Compl. ¶ 23.)

4

Also on information and belief, Hess alleges that Beach First was aware of a number of facts about Okra and the history of the Okra Loan that did alert or should have alerted it to an increased likelihood of default.  (Compl. ¶ 24.)

Hess claims that Beach First was aware of a number of facts that should have raised red flags about the health of the loan.  It knew, for example, that Okra was subject to a credit card factoring agreement[2] with a separate company that required it to repay borrowed money through "holdbacks" of up to thirty-five percent of Okra's gross receipts.  (Compl. ¶ 24(a).)  Beach First had made an earlier loan to Okra and was also aware that, because of the factoring agreement, Okra was unable to repay that loan.  In fact, Beach First suggested that Okra use the $3,000,000.00 B&I Program Loan to pay off its prior Beach First loan and the money owed through the factoring agreement; Beach First then learned that Okra was unable to pay off the factoring agreement debt because it had to use part of the Loan to satisfy unpaid payroll taxes.  (Compl. ¶ 24(b).)  Beach First had also received late payments on the Loan and knew that Okra's business checking account often carried a negative balance.  (Compl. ¶ 24(c)-(d).)  A Beach First employee was frequently advised of Okra's mounting financial problems.  (Compl. ¶ 24(e).)  Finally, unbeknownst to Hess, Beach First was, at the time it sold the

---

[2] "Factoring" is the "buying of accounts receivable at a discount." Black's Law Dictionary 630 (8th ed. 2004).

Loan to Hess, under pressure from the federal government to increase its liquidity.  (Compl. ¶¶ 26-28.)  In short, Hess suggests that Beach First hid what it knew about the Loan in order to increase liquidity by selling off a bad asset for a good price.

Based on these allegations, Hess brought a cause of action for fraud (Count I) and, in the alternative, a cause of action for constructive fraud (Count II).  It asks for judgment in an amount in excess of $100,000.00, punitive damages, and costs.

Beach First filed a motion to dismiss the Complaint on May 11, 2009.  Hess opposed the motion on May 22, and Beach First submitted a reply brief on May 28.  The motion to dismiss is before the Court.

## II.  Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint.  *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994) (citation omitted).  In deciding a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citation omitted).  Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.*  A motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted).

Fraud cases must meet a heightened pleading standard under Federal Rule of Procedure 9(b). Rule 9(b) requires that, when alleging fraud or mistake, "a party must state with particularity the circumstances constituting the fraud or mistake." "[T]he 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (*quoting* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1297, at 590 (2d ed. 1990) and collecting authorities). The purpose of this rule is to put defendants on notice of the conduct complained of, to protect defendants from frivolous claims, to eliminate fraud actions in which all the facts are learned after discovery, and to protect defendants from the harm to their goodwill and reputation that often results from fraud claims. *Id.* at 784 (citation omitted). Failure to comply with Rule 9(b) is treated

7

as a failure to state a claim under Rule 12(b)(6).  *Id.* at 783 n.5.

### III. Analysis

Beach First raises a number of arguments in support of its motion to dismiss.  It claims, generally, that Hess, as a sophisticated business entity that memorialized its agreement to purchase the Loan in a contract, cannot place the blame for its own poor business judgment on Beach First through a fraud claim. (Def.'s Mem. in Supp. 1-2.)  It also argues that the Complaint does not plead the required elements of misrepresentation, duty, and reliance; that any statements that can be attributed to it were mere opinions or non-actionable predictions as to future events; and that Hess has not met the heightened pleading requirement of Rule 9(b).  The Court will address these arguments in turn below.

A. Whether the Existence of a Contract Bars the Fraud Claim

Beach First initially argues that Hess should not be allowed to pursue a fraud claim when the parties have memorialized their business agreement in a contract.  Virginia law, however, recognizes the possibility of a separate fraud tort even where a contract exists.  *City of Richmond, Va. v. Madison Mgmt. Group, Inc.*, 918 F.2d 438, 446-47 (4th Cir. 1990). "Virginia law 'distinguishes between a statement that is false when made and a promise that becomes false only when the promisor

8

later fails to keep his word.  The former is fraud, the latter is breach of contract." *Id.* at 447 (*quoting Lissmann v. Hartford Fire Ins. Co.*, 848 F.2d 50, 53 (4th Cir. 1988)).  Thus, the existence of a contract does not automatically bar Hess's claim for fraud.  And as explained below, Hess adequately pled facts that fulfill the elements of fraud and constructive fraud.

The terms of the purchase contract did state that Hess's premium payment was not guaranteed and was "subject to loss in the event of prepayment or default."  (Compl. Ex. E.; Def.'s Reply 4.)  The statement that a borrower may default on a loan – surely a truism in the business in which these parties regularly engage – is categorically different than pre-sale representations of fact about the financial circumstances of the borrower.  The contractual statement may, as Hess argues, forbid reliance on oral statements by Beach First employees that purported to "guarantee" or predict a full recovery of Hess's investment – for example, the clause may vitiate any reasonable reliance on Brown's statement that the loan was "fine," to the extent that Brown was predicting that the loan would be paid in full over a full term.  (Compl. ¶ 15.)

However, the contract language does not, as a matter of law, rule out reasonable reliance on non-predictive statements of present fact.  Hess has alleged that Beach First told Hess that it did not know that certain risk factors existed.  Whether or

not it did know of the risk factors at the time it made that representation could be ascertainable as a factual matter.  If, as Hess claims, it only entered into the contract based on assurances about certain facts as they then stood, and those assurances turned out to be false, Hess may have a valid claim for fraud that is not barred by the contract.  That issue can only be decided after discovery.  The Court will reject Beach First's argument that the existence of the contract alone bars this action.

B. <u>Whether the Complaint Pleads the Elements of Fraud</u>

A party asserting a claim for actual fraud under Virginia law must allege the following: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *State Farm Mut. Auto Ins. Co. v. Remley*, 618 S.E.2d 316, 321 (Va. 2005).  Beach First claims that Hess could not have relied on statements made by its agents because any such statements were opinions, not facts, and were too vague to induce reasonable reliance.  Beach First also argues that Hess had access to all of the information it needed to verify the quality of the Loan and thus had no right to rely on any statements made by Beach First agents.

1. <u>Whether the Statements Were Opinions or</u>
   <u>Misrepresentations of Fact</u>

Beach First asserts that any statements made by its agents are not actionable as fraud because they were statements of opinion or predictions about future events, not misrepresentations of fact.

Fraud requires a misrepresentation of existing fact; mere opinion does not suffice.  *See, e.g.*, *Cohn v. Knowledge Connection*, 585 S.E.2d 578, 582 (Va. 2003); *see also Lambert v. Downtown Garage, Inc.*, 553 S.E.2d 714, 717 (Va. 2001) ("The mere expression of an opinion, however strong and positive the language may be, is no fraud." (quotation omitted)).  While Virginia courts have not established a bright line test to determine whether a representation constitutes an opinion or a statement of existing fact, statements that can be classified as "'[c]ommendatory . . . trade talk, or puffing, do not constitute fraud'" because they are "'mere expressions of opinion which cannot rightfully be relied upon, at least where the parties deal on equal terms.'" *Id.* at 712-13 (*citing Yuzefovsky v. St. John's Wood Apartments*, 540 S.E.2d 134, 142 (Va. 2001); *quoting Tate v. Colony House Builders*, 508 S.E.2d 597, 600 (Va. 1999)).  Likewise, predictions as to future events generally cannot form the basis of a fraud claim.  *See Patrick v. Summers*, 369 S.E.2d 162, 164 (Va. 1988).

11

Hess alleges that Beach First made a number of relevant statements, including Brown's oral representations and the written "letter of attestation" (the "Attestation") that he signed.  The oral statements alleged include Brown's assurance that Beach First's B&I Program loans as a whole were performing well and could be expected to do so in the future (Compl. ¶¶ 11, 13), that the Loan was "good solid credit" and "fine," and that the restaurant had been in existence for a long time, was a staple in the local community, and was in all respects a successful enterprise.  (Compl. ¶ 15.)  The written and signed Attestation, by contrast, expressly "represent[ed] that" Beach First and its "directors, officers, employees, [and] agents" did not have, or should not have, "through the exercise of reasonable diligence, any actual or constructive knowledge of any default . . . or [have] any information indicating an increased likelihood of a default."  (Compl. Ex. C.)

Beach First is correct that at least some of Brown's oral representations, which were no more than statements of opinion or predictions, cannot form the basis of a fraud claim. For example, Brown's alleged statement that the B&I Program loans could be expected to perform well in the future was purely predictive, and his statement that Loan was "fine" is unactionable because it is a mere statement of opinion.  (Compl. ¶¶ 11, 15.)  The Court will not dismiss Hess's fraud claims,

however, because it cannot rule as a matter of law that the Attestation contains only non-actionable opinions or predictions. Read, as required, in the light most favorable to Hess, the Attestation contains particular statements that may be actionable as fraud, especially the statement that no one at Beach First had "any information indicating an increased likelihood of a default by Borrower." (Compl. Ex. C.)  That sentence is one of present fact, not opinion or prediction: it states that, at the time in question, no one at Beach First possessed any information that indicated an increased likelihood of default.  The focus is on Beach First's statements about what it knew at a definite point in the past.  One *could* interpret the statement as a prediction that default appeared unlikely, but many statements of present fact tend to make some future event more or less likely.  That they do so does not necessarily transform them into un-actionable opinions.

In an attempt to minimize the relevance of the Attestation, Beach First argues that none of the alleged facts suggest that Brown had actual knowledge of the "risk factors" that, Hess claims, created "an increased likelihood of a default." (Compl. ¶ 24 & Ex. C.)  Thus, Beach First suggests, the Attestation does not contain any actionable false representations.  In the Attestation itself, however, Brown "represent[s] that" no one at Beach First knew about any risk

13

factors.  (Compl. Ex. C.)  At this stage of the litigation, the Court reads that statement as tantamount to a representation that the attestor was able to speak on the question of whether any Beach First employee knew of any risk factors.

Thus, the Court finds that Hess has properly pled a knowingly false representation by Beach First.  The Complaint sufficiently alleges that the representations in the Attestation were false; assuming that the Complaint relates the risk factors described in ¶ 24 with veracity, at least several persons at Beach First must have known about Okra's ongoing financial difficulties.  Brown, however, represented that no one at Beach First knew about them.

The risk factors described in ¶ 24 included "information indicating an increased likelihood of a default" by Okra: Hess alleged that Beach First was aware of a financing arrangement that essentially required the garnishment of thirty-five percent of the Restaurant's gross receipts, an inability to repay a prior loan, and late payments on the Loan in question; Hess also alleged that a Beach First employee was regularly informed about Okra's mounting financial difficulties.  (Compl. ¶ 24 & Ex. C.)

Finally, Hess alleges, on information and belief, that Brown knew about the risk factors but did not disclose them, and that he falsely stated that he was not aware of any material risk

factors.  (Compl. ¶¶ 23-24, Ex. C.)  At this stage, the Court
must accept the allegation that Brown, who signed the Attestation
stating that no one at Beach First knew of such material
information, actually did know about them.  As explained above,
the Attestation itself – Brown's signed statement – implies that
Brown had enough information about the financial circumstances of
Okra to know that the company was in trouble.

Additionally, the Complaint sufficiently alleges that
the claimed misrepresentations were material.  It states that
Hess took action based on Beach First's written and verbal
assurances and that, if Beach First had revealed the risk factors
outlined in the Complaint, Hess would not have purchased the
Loan.  (Compl. ¶¶ 18, 29.)  Hess also asserted that it was
damaged by these misrepresentations because they induced it to
purchase a loan on which Hess lost more than $99,000.00.  (Compl.
¶¶ 18, 29.)

2. <u>Reasonable Reliance on Oral Assurances</u>

Fraud requires reliance by the misled party on the
material, false representation.  *State Farm Mut. Auto Ins. Co.*,
618 S.E.2d at 321.  The Complaint alleges that Hess relied on
Beach First's representations when it decided to purchase part of
the Loan.  (Compl. ¶ 25.)  Beach First raises several objections
to Hess's claimed reliance.  First, it argues that Hess had a
duty to investigate its potential investment and failed to do so.

15

Beach First also argues that it did not have a duty to disclose anything about the Loan and that the Complaint failed to allege that Beach First took any act designed to conceal Okra's financial condition.  Lastly, Beach First argues that the representations that it allegedly made were too vague and indefinite to induce reliance.  (Def.'s Mem. in Supp. 6-9.)

        a. <u>Duty to Investigate and Duty to Disclose</u>

        Beach First suggests that the Court should dismiss both fraud claims because Hess failed to investigate the potential risks involved in its partial acquisition of the Loan.  Beach First also claims that Hess failed to allege that Beach First performed any act designed to conceal Okra's financial condition or to discourage Hess from investigating the company.  (Def.'s Mem. in Supp. 6-7.)

        In support, Beach First cites *Western Capital Partners, LLC v. Allegiance Title & Escrow* for the proposition that, when a fraud claim is based on the non-disclosure of a material fact, some relationship between the parties must have created a duty to disclose.  520 F. Supp. 2d 777, 782 (E.D. Va. 2007).  The principle is inapplicable here, however, because the fraud claim is based on alleged affirmative misrepresentations by Beach First about whether it knew of any risk factors, not on Beach First's silence.  In other words, Hess alleged that Beach First made positive assurances that it knew were false.  *Western Capital*

16

*Partners* does not stand for the proposition that a party can undertake to make an incomplete disclosure, allow another party to rely on the affirmatively incomplete disclosure, and then disclaim liability because it had no affirmative duty to disclose.  *See* 520 F. Supp. 2d at 782-83 (outlining defendant party's allegation that the plaintiff concealed its inclusion of a material provision in a closing document).

Beach First next cites *Harris v. Dunham*, 127 S.E.2d 65 (Va. 1962), for the proposition that one cannot rely on the statements of another when one has personally investigated the subject matter about which the statements were made.  127 S.E.2d at 70-71.  Here, however, Hess has not alleged that it performed its own investigation; Beach First's argument is better suited to a later stage of the litigation.  Instead, Hess claims to have relied upon information provided by Beach First that suggested that no investigation would be necessary.  At this stage, the Court will not dismiss Hess's claim based on a purported failure to investigate.  Beach First's statements may have diverted Hess from making further inquiry or inspection – and, in any event, Hess did not allege that it made an investigation or had a duty to investigate that it did not fulfill.  *See Watson v. Avon St. Bus. Ctr., Inc.*, 311 S.E.2d 795, 798-99 (Va. 1984) (quotation omitted); *see also Horner v. Ahern*, 153 S.E.2d 216, 219 (Va. 1967) (no duty to investigate when a defendant's statement is

17

"designed to throw the plaintiffs off their guard and to deter them from making further investigation").  The Court cannot rule as a matter of law that Hess had a duty to investigate and failed to do so or that Beach First's statements did not dissuade Hess from investigating.

      b. <u>Whether the Representations Were Too Vague to Induce Reliance</u>

      Beach First claims that any representations it may have made were too vague and indefinite to induce reasonable reliance. The argument is better suited to several oral statements that Brown is alleged to have made – for example, his statement that the Restaurant was a staple in the Myrtle Beach community and that it was a successful enterprise.  In the motion to dismiss analysis, however, the argument fails with respect to the statements in the Attestation.  As noted above, Hess alleges that Brown made representations that could plausibly be seen as statements of present fact, verifiable to the extent that, at the time the Attestation was made, Beach First either did or did not have in its possession "information indicating an increased likelihood of a default."  (Compl. Ex. C.)

      Statements of fact that relate to the "present quality or character" of the product at issue may induce reasonable reliance. *See Tate v. Colony House Builders*, 508 S.E.2d 597, 599 (Va. 1999) (distinguishing a statement of fact from an expression

18

of opinion by citing *Kuzcmanski v. Gill*, 302 S.E.2d 48, 50 (Va. 1983), in which the court found that the statement that a house was in "excellent condition" constituted mere sales talk).  At this time – taking the facts in the Complaint as true – the Court does not find the statements in the Attestation to be so general or indefinite that they could not induce reasonable reliance.

   3. Whether the Allegations Meet Rule 9(b)'s Pleading
      Requirements

        Beach First also argues that Hess's allegations fail to meet the heightened fraud pleading standard of Rule 9(b).  It claims that Hess makes only legal conclusions as to Beach First's misrepresentations about the expected performance of the Loan and that Hess does not include the names of its other employees who allegedly knew of the risks.  The Complaint, however, need only include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quotation omitted).  Hess claims that Brown made false representations in a Letter of Attestation dated July 25, 2008 and that he made oral representations over the phone and in person at Beach First's South Carolina office around the same time.

19

These allegations are sufficient to fulfill the requirements of Rule 9(b). Hess did not allege that other Beach First employees made misrepresentations, and so detailed pleading about them is not required under the Rule. In short, the Complaint places Beach First on notice of Hess's claims with the required specificity and demonstrates that Hess did not bring a case in which all the facts will come out only after the commencement of discovery. *See United States v. Maxwell*, 189 F. Supp. 2d 395, 399-400 (E.D. Va. 2002); *see also Stone Castle v. Friedman, Billings, Ramsey & Co.*, 191 F. Supp. 2d 652, 662-63 (E.D. Va. 2002).

C. Whether the Complaint Properly Alleges the Elements of Constructive Fraud

"[T]he elements of a cause of action for constructive fraud are a showing by clear and convincing evidence that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of his reliance upon the misrepresentation." *Mortarino v. Consultant Eng'g Servs., Inc.*, 467 S.E.2d 778, 782 (Va. 1996) (citing *Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994)). Like a finding of fraud, a finding of constructive fraud "requires clear and convincing evidence that one has represented as true what is really false, in such a way as to induce a reasonable person to believe it, with the intent that the person

20

will act upon this representation." *Evaluation Research Corp.*, 439 S.E.2d at 390.

Constructive fraud, in other words, requires a lesser showing than fraud: the false representation can be made "innocently or negligently" rather than with the "intent to mislead." *Id.* Because the Court finds that Beach First properly pled fraud in its Complaint, the Court necessarily finds that it has properly pled its alternative claim for constructive fraud.

### IV.   Conclusion

For these reasons, the Court finds that Hess properly pled alternative causes of action for fraud and constructive fraud.  The Court will deny Beach First's motion to dismiss.

July 7, 2009                      _____/s/_____
Alexandria, Virginia                  James C. Cacheris
                              UNITED STATES DISTRICT COURT JUDGE